IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CAMILLE MICHELLE JAMES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 19-00397-CV-W-ODS ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. For the following reasons, the Commissioner's decision is affirmed.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; it is relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1977 and has a high school education. R. at 39-40, 179, 181. She previously worked as a cashier and hair stylist. R. at 41-42, 214, 225-26, 257, 265. In December 2016, Plaintiff applied for supplemental security income and disability insurance benefits, alleging a disability onset date of October 21, 2015. R. at 16, 179-88, 193-94. In July 2017, her applications were denied. R. at 104-08, 111-15. She requested a hearing before an administrative law judge ("ALJ"). R. 171-75.

A hearing was held in July 2018. R. at 34-56. Thereafter, the ALJ issued a decision, finding Plaintiff is not disabled. R. at 16-28. She concluded Plaintiff's severe impairments are lumbar and cervical spondylosis, obesity, and chronic bronchitis. R. at 18. The ALJ found Plaintiff has the following residual functional capacity ("RFC"):

> She could lift and carry 10 pounds frequently. She could stand or walk for 2 hours and sit for 6 hours in an 8-hour workday. She could not perform work requiring the operation of foot controls, or the climbing of ladders, ropes, or scaffolds, or crawling. She requires the ability to alternate sitting and standing while at the workstation on task every hour for a few minutes, but not an extended period of time. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. She can frequently balance on uneven surfaces. She cannot perform overhead work. The claimant must avoid more than occasional exposure to pulmonary irritants, extreme heat, unprotected heights, and hazardous machinery.

R. at 21. Based on the RFC and the vocational expert's ("VE") testimony at the hearing, the ALJ concluded Plaintiff can work as a lens inserter, wire wrapper, and production checker. R. at 27. Plaintiff unsuccessfully appealed the decision to the Appeals Council. R. at 1-3. She now appeals to this Court.

## III. DISCUSSION
### A. Commissioner's Decision at Issue

Plaintiff asks the Court to reverse the Commissioner's decisions regarding her applications for disability insurance benefits and supplemental security income. Doc. #3; Doc. #9. Defendant contends only his decision denying Plaintiff's application for supplemental security income is at issue in this appeal. Doc. #10, at 1. Although she could have responded to the Commissioner's argument, Plaintiff has not done so, and the time for doing so has passed. L.R. 9.1(d)(3)(c). Regardless, Plaintiff's counsel,

2

during the hearing before the ALJ, conceded the hearing was related only to Plaintiff's application for supplemental security income benefits. R. at 38.

The ALJ found Plaintiff failed to demonstrate she was disabled on or before September 30, 2014, the date she was last insured. R. at 16. Therefore, Plaintiff did not meet the requirements for disability insurance benefits. *Id.* The ALJ also noted Plaintiff alleged a disability onset date "well past" the date she was last insured, and her prior application for benefits was denied on October 20, 2015, after she was last insured. *Id.* The ALJ determined there was "no basis to reopen the prior application and administrative finality applies through October 20, 2015." *Id.* For these reasons, the ALJ affirmed the initial determination that Plaintiff was ineligible for disability insurance benefits and dismissed Plaintiff's request for a hearing on those benefits. *Id.* (citation omitted). When affirming the ALJ's decision, the Appeals Council found the ALJ "dismissed…your request for hearing regarding whether you were disabled on or before September 30, 2014, the date you were last insured for purposes of disability insurance benefits…." R. at 1. The Appeals Council concluded there was no reason to review the ALJ's dismissal. *Id.*

"The dismissal of a request for a hearing is binding, unless it is vacated by an administrative law judge or the Appeals Council." 20 C.F.R. § 404.959. Neither the ALJ nor the Appeals Council vacated the denial of Plaintiff's request for a hearing on her disability insurance benefits application. Hence, the Commissioner's decision on Plaintiff's disability insurance benefits application is not before this Court. Only the Commissioner's decision on her supplemental security income application is at issue.

### B. Plaintiff's RFC

Plaintiff argues the RFC formulated by the ALJ was not based on the substantial evidence on the record, and thus, this matter must be reversed. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*,

3

829 F.3d 926, 932 (8th Cir. 2016). As Plaintiff concedes, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.*; Doc. #9, at 10.

### (1) Medical Opinions

In determining Plaintiff's RFC, the ALJ considered, among other things, medical opinions. R. at 24-25. The ALJ afforded "great weight" to the opinions of two state agency consultants: Garland Tschudin, M.D., and Steven Akeson, Psy.D. *Id.* She found these consultants were highly qualified experts in evaluating medical and psychological issues in disability claims as well as Social Security's regulations, rules, and disability programs. R. at 25. The ALJ also determined the consultants' opinions were supported by the objective medical evidence, grounded in their areas of expertise, and "reasonably consistent with the record as a whole." *Id.*

Based on Plaintiff's medical records, Tschudin opined Plaintiff "could reasonably be limited to a sedentary exertional level. R. at 88. Regarding Plaintiff's specific functional limitations, Tschudin concluded she could carry and/or lift ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and frequently balance, kneel, crouch, and crawl. R. at 24, 86-87. Tschudin determined Plaintiff could occasionally stoop, climb ramps, and climb stairs but she could never climb ladders, ropes, or scaffolds. R. at 24, 87. Finally, Tschudin stated Plaintiff must avoid concentrated exposure to hazards and extreme heat. R. at 24, 87-88. Akeson opined Plaintiff was mildly limited in concentrating, persisting, and maintaining pace, but had no other functional limitations. R. at 25.

The ALJ's RFC largely incorporated the functional limitations set forth by Tschudin. Like Tschudin, the ALJ found Plaintiff could frequently lift and carry ten pounds, stand or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. R. at 24. She concluded Plaintiff could frequently balance, occasionally climb ramps and stairs, and occasionally stoop. R. at 24. She also determined Plaintiff could not climb ladders, ropes, or scaffolds, and had to avoid more than occasional exposure to extreme heat and hazards. *Id.*

In certain respects, the ALJ's RFC is more limited than the limitations set forth by Tschudin. Tschudin opined Plaintiff could frequently kneel and crouch, but the ALJ determined she could occasionally kneel and crouch. R. at 24, 87. Tschudin stated

4

Plaintiff could frequently crawl; however, the ALJ found she could not crawl. *Id.* Tschudin found Plaintiff could operate foot controls, but the ALJ concluded she could not operate foot controls. *Id.* Also, the ALJ included additional limitations – i.e., Plaintiff had to alternate between sitting and standing every hour, she could not stand or sit for extended periods of time, and she could not perform overhead work. R. at 24.

Regarding Plaintiff's treating physicians' opinions, the ALJ gave "little weight" to Mauricio Garcia, M.D.'s opinion because Garcia only addressed a temporary post-surgery restriction. *Id.* The ALJ also afforded "minimal weight" to Jignesh Shah, M.D.'s opinions. *Id.* In December 2016, Shah "completed a handicapped placard" for Plaintiff. *Id.* The ALJ noted she was not determining whether Plaintiff was eligible for a handicapped parking placard but assessing whether she was disabled according to Social Security's rules and regulations. *Id.* Instead of providing specific functional limitations, the ALJ observed Shah gave an "overall conclusion that [Plaintiff] was eligible for a handicapped placard." *Id.* In July 2017, Shah, in a statement for a housing development, indicated Plaintiff could "only walk about a block" and had "difficulty going upstairs or downstairs more than 2-3 steps." *Id.* But the statement was based on Plaintiff's self-reporting and was made four months after back surgery. R. at 26. The ALJ remarked that Shah "did not document positive objective clinical or diagnostic findings to support his assessment." *Id.*

The medical opinions do not establish Plaintiff is unable to work in any capacity. Further, the opinions do not demonstrate Plaintiff is unable to perform sedentary work. The ALJ properly considered and assessed the medical opinions.

### (2)  Medical Records

Plaintiff concedes "mild or unremarkable findings and other medical evidence may constitute sufficient medical support for an RFC finding, even when the record contains no medical opinion." Doc. #9, at 10. Still, she argues the medical evidence supports greater restrictions than those included in the ALJ's RFC. *Id.* Plaintiff refers to her "long history of neck and back pain," "chronic pain," "tenderness across her lumbar spine with painful leg raising," "lumbar spinal surgery," "cervical facet injections," and the need for a "laminectomy and fusion." *Id.* at 10-11. While Plaintiff cites some

5

medical records, she neither includes medical providers' observations regarding her functional limitations nor provides a complete depiction of her medical records.

In her decision, the ALJ detailed most of Plaintiff's relevant medical records. R. at 22-24. The ALJ identified several diagnostic studies conducted in 2016 and 2017, including x-rays and MRIs, that did not indicate total debilitation. R. at 22-23. She also noted Plaintiff's "physical examinations remained grossly normal and very benign," despite her allegation otherwise. R. at 23-24.

The Court has also reviewed Plaintiff's medical records. The Court was unable to locate any medical treatment for Plaintiff's lumbar and cervical spondylosis between October 2015 (the alleged onset of disability) and July 2016. Tellingly, the summary of medical information in Plaintiff's brief skips from June 2015 to July 2016. Doc. #9, at 2. No explanation is provided for this lapse in medical treatment. The fact that Plaintiff did not receive any treatment for an allegedly disabling condition over the course of nine months suggests her condition is not disabling.

Regardless, beginning in July 2016, the medical records reveal Plaintiff's functional limitations are not as severe as she contends. In July 2016, Shah noted Plaintiff had "[n]ormal range of motion," and Amanda Gillespie, NP-C, observed her gait was "normal." R. at 373, 637. In October 2016, during a neurosurgery consultation, John Gianino, M.D. found there were "no significant findings on the MRI," "no significant disc herniation or neural compression," and "no evidence of radiculopathy"; thus, surgery would not be helpful. R. at 620-23. Instead of surgery, Gianino opined "[e]xercise strengthening and reconditioning would be more appropriate" for Plaintiff. *Id.*

Between April 2017 and May 2018, Plaintiff was seen by Garcia and Natalie Saisi, APRN, FNP-C, on numerous occasions. In April 2017, one week after low back surgery, Garcia found Plaintiff's "functional impairment" was "mild." R. at 387. He directed Plaintiff to continue the home exercise program, ice, heat, muscle rub cream, and massage. R. at 389. During that same month, Saisi found Plaintiff's functional impairment was mild. R. at 414, 418.

From June 2017 through May 2018, Garcia and Saisi consistently observed Plaintiff's functional impairment was "moderate" and only interfered with some daily activities. R. at 452, 463, 470, 475, 478, 482, 487, 494, 498-99, 502, 505, 512-13, 518-19. In many of these instances, Plaintiff was directed to continue the home exercise

program. R. at 389, 455, 472-73, 508, 522. In October 2017, Garcia gave Plaintiff a cervical epidural steroid injection. R. at 509-10. In March 2018, Garcia gave Plaintiff a "cervical facet and medial branches blockade," from which she reported an eighty percent improvement in pain within an hour. R. at 491-92.

Other medical providers expressed similar observations. In February 2017, Roger Misasi, D.O., noted "diffuse tenderness" in Plaintiff's low back but found she had "negative straight leg raises." R. at 438. In July 2017, Paul Doskey, M.D., indicated Plaintiff's functional impairment was moderate, and similar to Garcia and Saisi, directed her to continue the home exercise program. R. at 523-24, 527. When Shah examined Plaintiff in August 2017, he observed her "musculoskeletal" had "Normal range of motion. No swelling. No deformity." R. at 583. In November 2017, Shah observed Plaintiff had limited range of motion in her neck, and he referred her to pain management at Truman Medical Center. R. at 575-77. In August 2018, Shah again observed limited range of motion in her neck. R. at 562, 566, 568.

Josue Gabriel, M.D. found Plaintiff had "decreased pinprick sensation in the left L5-S1 dermatomal distribution," "good range of motion cervical spine," "positive straight leg raise left lower extremity," "moderate spasm lumbosacral paraspinous musculature," and "decreased range of motion lumbar spine with flexion and rotation." R. at 467. A "posterior lumbar discectomy, fusion instrumentation" was indicated, and Plaintiff elected to proceed with the procedure. R. at 468. These observations were made in December 2017, but, as of July 2018, Plaintiff had not had the surgery. R. at 23, 46.

Based on the foregoing, the medical evidence does not establish Plaintiff possesses greater limitations than those included in the RFC.

### (3) Daily Activities

Plaintiff contends the ALJ, when determining the RFC, failed to consider Plaintiff's minimal daily activities and her inability to perform basic household chores without assistance. Doc. #9, at 12-13. Contrary to her argument, the ALJ considered both issues. R. at 22, 26. Regarding Plaintiff's reported daily activities, the ALJ, as explained in detail below, found the "limiting effects" of Plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record…." R. at 22. The ALJ also "reviewed [Plaintiff's] personal care records, which indicate that [she]

has a home aide for 21 hours per week to assist with bathing, dressing, meal preparation, and other activities of daily living." R. at 26. Because the standard for the personal care service was unclear, the ALJ afforded the evidence "little weight." *Id.* The ALJ also found the care was "not supported by the objective medical evidence in the record as a whole." *Id.* The ALJ pointed out that Plaintiff's "treatment notes do not document such significant objective findings to keep [Plaintiff] from dressing, bathing, or preparing meals herself." *Id.*

### (4)  Plaintiff's Credibility

Plaintiff also argues the ALJ's assessment of her credibility is unsupported. Doc. #9, at 14. The familiar standard for analyzing a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* at 1322. The ALJ "need not explicitly discuss each *Polaski* factor...[t]he ALJ need only acknowledge and consider those factors before discounting a claimant's subjective

complaints." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citations omitted); *see also Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007).

Plaintiff alleges "significant symptoms and limitations," including her inability to lift five pounds with her left hand and ten to fifteen pounds with her right hand; sit for thirty minutes; stand for forty-five to sixty minutes; and walk about ten or fifteen feet before needing to take break. R. at 22. She claims to spend nearly all day laying or sitting and needs assistance with daily living activities. *Id*. The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record…." *Id.* In reaching this determination, the ALJ relied on several types of evidence in the record.

First, the ALJ found the clinical examinations and objective findings were "inconsistent with her severe allegations of total debilitation." R. at 22-23. Although Plaintiff reported she spent her days laying down and resting, the ALJ observed there was no evidence of muscle atrophy, which would occur with lack of muscle use. R. at 24. Plaintiff testified to using a cane, but the medical records do not demonstrate it was prescribed. R. at 23. And the ALJ noted there were only a "few instances" when Plaintiff "presented with an assistive device at…medical appointments." *Id*.

Second, the ALJ noted Plaintiff's physicians recommended she undergo a second back surgery, but she has yet to have the surgery. *Id*. According to the ALJ, the "prolonged delay of several months despite the care of her ill father suggest that perhaps the claimant's symptoms are not as severe as she alleged." *Id*.

Third, the ALJ observed Plaintiff's work history was sporadic before her alleged disability onset. R. at 24. This sporadic work history, according to the ALJ, "raise[d] a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments." *Id.* Finally, Plaintiff alleges "excessive drowsiness from the use of medications." R. at 24, 43. However, the ALJ indicated the treatment notes did not corroborate Plaintiff's allegations. *Id.*

The ALJ properly considered the medical evidence, Plaintiff's failure to follow through on recommended surgery, her sporadic work history, and inconsistencies between her allegations and evidence in the record. Considering the record as a whole, the ALJ did not err in finding Plaintiff's alleged limitations were not entirely credible. Accordingly, the Court finds the ALJ did not err in weighing Plaintiff's credibility.

### (5) Failure to Develop the Record

Plaintiff alleges the ALJ's failure to support the RFC with substantial evidence is based on the ALJ's failure to develop the record. Doc. #9, at 13. Plaintiff argues the record contains minimal evidence about her functional limitations, and the matter must be remanded so "the ALJ may obtain supporting evidence from a medical professional that addresses" Plaintiff's RFC. *Id.* at 13, 15.

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citation omitted). Plaintiff must "submit all evidence…that relates to whether or not you are…disabled." 20 C.F.R. § 404.1512(a). While the ALJ is required to develop the record fully and fairly, the ALJ only must order a consultative examination when it is necessary to make an informed decision. *See Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (citation omitted). The Court finds the record was properly developed and provided sufficient information on which the ALJ based her decision, and therefore, a consultative examination was not necessary.

## IV. CONCLUSION

For all of the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is affirmed.

IT IS SO ORDERED.

DATE: December 18, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT